## G. M. Swisher v. Charles Deering et al.

1.  GUARANTY—*Waiver of Notice of Acceptance.*—A guarantor waives notice of the acceptance of his offer to guarantee the performance of the terms of a contract, and notice that the contract was not being complied with, where, in the contract of guaranty it is said : " We hereby waive notice of acceptance of the above contract and notice of default of the above-named agent," " the above contract" referring to both the contract guaranteed and the contract of guaranty.

**Assumpsit,** upon a contract of guaranty.  Appeal from the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge presiding.  Heard in this court at the May term, 1902.  Affirmed. Opinion filed November 1, 1902.

WOLFE & MULLIKEN and JOHN J. REA, attorneys for appellant.

RAY & DOBBINS and WALTER B. RILEY, attorneys for appellees; WILLIAM M. MAXWELL, of counsel.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

On February 18, 1902, the appellees, Charles Deering, James Deering and Richard F. Roe, partners doing business under the firm name of Deering Harvester Company, brought their action of assumpsit in the Circuit Court of Champaign County against the appellant, G. M. Swisher, to recover $1,615.38, representing the balance which one O. P. Kellogg had acknowledged in writing that he owed to the appellees under the terms of two certain written contracts which he had made with them at the time he was appointed their agent at St. Joseph, Champaign county, Illinois, for the season of 1901, the terms of which contracts the appellant, at the time the contracts were made, had guaranteed that Kellogg would keep and perform.

The declaration counted specially on the written guaranty, and contained also appropriate common counts.  The appellant pleaded non-assumpsit, and a special plea that the written guaranty had never been delivered.  Issue was joined on the plea of non-assumpsit, and the facts averred in the spe-

cial plea were traversed.    The case was tried by jury, who returned a verdict in favor of the appellees for $1,615.38. The appellant moved for a new trial, which was denied, and judgment entered upon the verdict.

To effect a reversal of the judgment the appellant prosecutes this appeal, and argues for error that the verdict and judgment are contrary to the law and evidence; that the court erred in admitting in evidence, over the objection of appellant, the written acknowledgment of Kellogg that he was indebted to the appellees; that the court erred in giving to the jury appellee's instructions numbered 2, 3 and 5; and in refusing appellant's instructions numbered 1, 2, 3, 4, 5, 7 and 9, as requested by the appellant.

It appears that the appellees are manufacturers of farm machinery, twine and supplies, with the general office in the city of Chicago, and that they have an office also in Springfield, Illinois; that O. P. Kellogg is a dealer in agricultural machinery, twine and supplies at the village of St. Joseph, Champaign county, Illinois, and that the appellant lives near that village and is in the grain commission business.    Mr. Kellogg had been the agent for the appellees at St. Joseph for three years prior to 1901, and the appellant had guaranteed to the appellees that he, Kellogg, would account for the proceeds of all farm machinery and supplies which he would sell for the appellees during those years.

On March 26, 1901, C. E. Peebles, the general agent of the appellees for that part of Illinois comprising Champaign county and other counties, called upon Mr. Kellogg at St. Joseph for the purpose of appointing him agent of the appellees for the sale of their goods there for the season beginning then and ending December 31, 1901; and to that end Mr. Peebles made out and signed, in the name of the appellees, a " Commission Agency Machine Contract" and a " Twine Commission Contract," both of which Mr. Kellogg signed.    They both then went to the appellant, who agreed to guarantee that Mr. Kellogg would faithfully perform the agreements he had made with the appellees in

both contracts, and he and Mr. Kellogg (but not Mr. Pee-
bles) went to the bank in order to get a pen, and there the
appellant signed his name to the guaranty under each of
the contracts and then turned both of them over to Mr.
Kellogg unconditionally (as testified to by Mr. Kellogg,
and as testified to by the appellant, conditionally that he
(Kellogg) should deliver them to Mr. Peebles when one
Yates should also join the appellant as co-guarantor thereon).
Mr. Kellogg did turn them both over to Mr. Peebles for the
appellees unconditionally, and with the appellant as the
only guarantor thereon. The two contracts and the guar-
anty written under each are as follows:

" Commission Agency Machine Contract.
St. Joseph, Ill., Mar. 26, 1901.

Memorandum of an agreement between Deering Har-
vester Company, a copartnership, of Chicago, Illinois, and
O. P. Kellogg, of St. Joseph P. O., County of Campaign
and State of Illinois.

*I:* Said Deering Harvester Company appoints said
——agent hereunder, and for receiving, keeping and selling
in its behalf its harvesters, binders, reapers, mowers, hay-
rakes, twine, extra parts, trucks, bundle carriers, flax car-
riers and other attachments, on commission, for the follow-
ing territory only: St. Joseph and vicinity, for the entire
season of 1901.

*II:* Said agent agrees to perform all the duties of such
agency with prompt business diligence and due care and
skill, and in particular also agrees:

*1:* To sell only upon the terms and at the prices pre-
scribed by Deering Harvester Company, solely to good and
responsible parties, using no warranty other than Deering
Harvester Company's printed warranty for 1901; to deliver,
set up, and fairly start every machine sold, and to instruct
the purchaser how to adjust it to work in different condi-
tions of grain or grass.

*2:* To effect a complete settlement with each purchaser
at the time of delivery, and remit all cash proceeds
promptly to Deering Harvester Company, and take all notes
representing the purchase price of time sales payable to
the order of Deering Harvester Company, using for that
purpose the note blanks furnished by said company.

*3:* To guarantee the payment of such notes in the form
now used by Deering Harvester Company in such case. It

is intended that notes taken from purchasers shall be such as shall be good without further security at any local bank in the vicinity, and if any note or notes be turned over as being of that character, and Deering Harvester Company shall, within six months, discover a mistake in so rating the same, said agent shall make the same good.

*4:*  To render to Deering Harvester Company, at the close of the selling season, or whenever requested by it, a complete statement of sales, and also to render to it, on request, a full statement of account upon blanks to be furnished by it for that purpose, and with every note or set of notes delivered to said company for acceptance on account of sales made under this contract, to furnish therewith, for the use and benefit of said company, correct information concerning the notemaker's credit and responsibility.

*5:*  To hold all goods shipped or received until sold and delivered, and the entire proceeds of all sales, as the sole property of said Deering Harvester Company, and as a special deposit for it, until it shall be fully settled with.

*6:*  Not to sell or be interested in the sale of any similar goods of or for any other house or concern, and to pay as liquidated damages the sum of $20 for each machine sold in event of sales being made in violation hereof.

*7:*  To pay all costs and expenses of a canvasser or expert, if any, while working for or with said agent, should any be provided by Deering Harvester Company.

*8:*  To insure by loss or damage by fire, in a reliable company, by policy in the name of Deering Harvester Company, at expense of said agent, all of said company's goods on hand at said agency, at any time, for at least three-fourths of the net price, while in his or their custody.

*9:*  To safely house or store and keep free of taxes or other charges to said Deering Harvester Company all goods on hand at any time excepting trucks, bundle carriers, flax-carriers, and machines which have been set up and used as samples, and remain unsold after harvest, which, in all cases, shall be paid for by said agent at time of settlement; and pay all damages to such property caused by neglect to properly store and care for same, and in no case to take parts from machines for sale as repairs.

*10:*  That said Deering Harvester Company, not regarding any of the notes as satisfactory or good, may, at its option, take and hold the same as collateral to the balance due from said agent.

*11:*  That this agency may at any time be terminated

by said Deering Harvester Company, without liability for damages; and it may at once take possession of the goods or property unsold, and of everything in the hands of said agent, in any way relating to the business, and in no case is said Deering Harvester Company to be held liable for any trespass committed by one agent upon the right of another; that the agent must protect his territory against trespass the same as any other property.

*12:* To order all repairs that may be needed for Deering machines from Deering Harvester Company, and provide suitable storage for the same; and said agent agrees not to purchase nor keep in stock nor offer for sale, nor be concerned in the sale of knives, sickles, sections or other parts of machines manufactured and furnished for Deering machines by any party other than Deering Harvester Company.

*13:* That said agent shall receive at his cost for carriage all printed matter Deering Harvester Company may supply him with, and diligently distribute same, and also advertise during the four months preceding harvest in at least one newspaper in each county of the territory occupied by him.

*III:* To supply the agency, said Deering Harvester Company will use its best efforts to complete and ship all machines and goods aforesaid ordered of it so long as its stock shall last, but shall not be liable to said agent in case the demand shall exceed the supply, or in case of inability, from fire or any other unavoidable cause, to supply the demand, and the said Deering Harvester Company reserves to itself the right to sell to parties in the above territory who may buy of it or its general agent direct.

Said Deering Harvester Company shall allow said agent, in full compensation or consideration for all his undertakings, and said agent hereby agrees to accept the same, the excess or difference between the net price, specified herein, and the price obtained from the purchaser, the same to be paid *pro rata* in cash and in notes, as the same represents the respective sales.

*IV:* Said agent agrees to receive, under the terms and conditions herein specified, all goods shipped after January 1, 1901, whether ordered or not, and now orders of Deering Harvester Company to be delivered f. o. b. at its factory, between January 1 and August 1, 1901, the following mentioned goods, and others subsequently ordered or received, which with all commission goods on hand from previous years, are subject to the provisions and conditions

of this contract, and all of the above are to be settled for at the net prices below named, or such other net prices as said Deering Harvester Company subsequently makes in writing to said agent.

(Deering Harvester Company will at settlement time waive agent's guaranty or notes properly graded as good and collectible without further security.)

F. O. B. St. Joseph in car lots.

ORDER:—Machines to be shipped.

1 Deering Ideal Binder, 6 ft..................................

1 Bundle Carrier for Ideal Binder..........................

1 Deering Ideal Mower, 5 ft.................................

B. C. free when sold with H. & B.

Sales on all extras shall be for cash only, on which a commission of twenty-five per cent shall be allowed to said agent (except net cash extras, for all of which said agent shall account in full, in cash, at time of settlement). Said agent agrees to furnish Deering Harvester Company with the broken parts, and also with the donee's receipt for "gratis" extras, upon blanks to be furnished them for that purpose.

All notes taken for machines and attachments to be due as follows: One-half on or before September 1, 1901, and one-half on or about September 1, 1902, with interest until paid.

DEERING HARVESTER COMPANY,

(Signed) Per C. E. PEEBLES,

(Signed) O. P. KELLOGG, Sales Agent.

This contract is not binding upon Deering Harvester Company until accepted by it at Chicago, Ill.

Accepted and approved at Chicago, Ill., this 4th day of April, 1901.

DEERING HARVESTER COMPANY,

By (signed) P. W. KELLY.

In consideration of the appointment or retention of the above party as agent of Deering Harvester Company for the sale of its harvesters, binders, reapers, mowers, hay-rakes, trucks, extras, twine and other property in certain territory, the undersigned jointly and severally guarantee the fulfillment by said agent of all his obligations and duties growing out of and relating to such agency or otherwise that now or hereafter may exist, and we agree to pay said Deering Harvester Company, or its successors, all damages it or they may sustain by reason of any default of said agent; and we hereby waive notice of acceptance of the above con-

tract, notice of default of the above named agent, demand and diligence; that the written acknowledgment of, or a judgment of any court against said agent, shall in every respect bind and be conclusive against the undersigned, their heirs and representatives, and that the liability hereby created shall not be waived, modified or canceled by any extension of time to pay or keep any part of said obligations or duties, or otherwise, nor except by surrender to us of this guaranty and agreement, or by indorsement hereon by Deering Harvester Company, at its home office in Chicago, showing release of fulfillment hereof.

No agent has authority to vary the terms of this contract of guaranty.

(Signed) G. M. SWISHER. (SEAL.)
Witness our hands and seals March 26, A. D. 1901."

### TWINE COMMISSION CONTRACT.

Memorandum of an agreement, made this 26th day of March, 1901, between Deering Harvester Company, a copartnership, of Chicago, Illinois, and O. P. Kellogg, of St. Joseph, County of Champaign and State of Illinois.

I.   Said Deering Harvester Company hereby appoints said O. P. Kellogg its agent, for receiving, keeping and selling in its behalf the following described binder twine in the following territory :   St. Joseph and vicinity during the selling season of 1901; reserving to itself, however, the right to make special sales in said territory without remuneration therefor to said agent.

II.   Said agent agrees to perform all the duties of such agency with prompt business diligence and due care and skill, and in particular also it is agreed that:

Said agent shall, immediately on receipt of twine, at his own expense, insure same from loss by fire, for the net price, and keep the same insured while in his custody in the name and as the property of Deering Harvester Company, and shall send such policy to Deering Harvester Company; shall guarantee the sale of not less than nine-tenths of all twine delivered to him and the due collection of the proceeds thereof on or before September 15, 1901, and all the twine, until sold and delivered, and the proceeds thereof, shall be and remain the exclusive property of Deering Harvester Company; shall not sell or offer for sale directly or indirectly, to any party outside of the above named territory; shall at his own expense safely house or store and pay all taxes or other charges on all goods on hand at any time;

shall deliver any twine that Deering Harvester Company may order from the unsold supply, without any charges thereon for handling, storing or otherwise. This agency may at any time be terminated by said Deering Harvester Company without liability for damages, and it may at once, without notice, take possession of the goods or property unsold and of everything in the hands of said agent in any way relating to the business.

III. The said agent may order of Deering Harvester Company to be delivered f. o. b. at its factory between January 1 and August 1, 1901 (unless delivery is prevented by labor strikes, fire, or causes beyond said company's control), subject to the conditions and provisions of this contract, the following mentioned binder twine at the prices named.

| f. o. b. St. Joseph with | Retail price per pound. | Car Machines | Retail price. per pound. |
|---|---|---|---|
| Standard Manila Twine | 11½ | Standard Twine | 10⅝ |

IV. Deering Harvester Company agrees to pay as commission to said agent, which shall be full compensation or consideration for the undertakings of said agent, two cents per pound on binder twine sold and accounted for.

V. It is agreed that these prices do not apply to future orders, but if additional twine is furnished during 1901 (without express agreement as to the price at which it is to be accounted for), such additional twine shall be accounted for to Deering Harvester Company, at its ruling market price (at the time of shipment thereof), with terms of accounting the same as those hereinabove written.

VI. And it is further agreed that this contract shall in no case be valid or binding upon said Deering Harvester Company until the same shall have been approved by Deering Harvester Company, at the home office in Chicago, and that it can not be changed subsequently in any of its provisions in any manner, either verbally or otherwise, by any person, without the written approval of Deering Harvester Company, at the home office in Chicago, and any agreement made changing the condition, price, terms of sale or warranty in this contract, without the written instructions of Deering Harvester Company, at the home office in Chicago, shall not be binding upon said Deering Harvester Company.

DEERING HARVESTER COMPANY,
(Signed) Per C. E. PEEBLES.
(Signed) O. P. KELLOGG, Sales Agent.

This contract is not binding upon Deering Harvester Company until accepted by it at Chicago, Illinois.

Accepted and approved at Chicago, Ill., this 9th day of April, 1901.

DEERING HARVESTER COMPANY,
By (signed) P. W. KELLY.

In consideration of the appointment of said O. P. Kellogg as agent of Deering Harvester Company, for the sale of its harvesters, binders, reapers, mowers, trucks, extras, twine, and other property in certain territory, the undersigned jointly and severally guarantee the fulfillment by said agent of all h— obligations and duties growing out of and relating to such agency or otherwise to Deering Harvester Company, that now or hereafter may exist, and we agree to pay said Deering Harvester Company, or its successors, all damages it or they may sustain by reason of any default by said agent; and we hereby waive notice of acceptance of the above contract, notice of default of the above-named agent, demand and diligence; that the written acknowledgment of, or a judgment of any court against said agent, shall in every respect bind and be conclusive against the undersigned, their heirs and representatives, and that the liability hereby created shall not be waived, modified or canceled by any extension of time to pay or keep any part of said obligations or duties, or otherwise, nor, except by surrender to us of this guaranty and agreement, or by indorsement hereon by Deering Harvester Company, at its home office in Chicago. No agent has authority to vary the terms of this contract of guaranty.

Witness our hands and seals March 26, A. D. 1901.

(Signed) G. M. SWISHER.   (SEAL.)
P. O. St. Joseph, Ills."

From the time the foregoing contracts and guaranties were executed and delivered, up to October 22, 1901, Mr. Kellogg, as the agent of the appellees at St. Joseph, sold goods amounting to $3,219.14, and then he went into bank·ruptcy upon his own petition. Before that time, however, the appellees had sent Mr. Peebles to see Mr. Kellogg at St. Joseph several times, in order to get him to pay them cash or notes for what he, Kellogg, had sold for them as their agent during the season of 1901, but Mr. Kellogg neglected to do so.

On October 25, 1901, however, Mr. Kellogg made an accounting with Mr. Peebles for the appellees, and turned over $1,455.25 in notes, of customers to whom he had sold

under said contracts, and he and Mr. Peebles made up the statement of the account between Kellogg and the appellees for the season of 1901, in which all the farm machinery, twine and supplies which Mr. Kellogg had sold as agent for appellees at St. Joseph, were charged to him at the net prices called for by said contracts, and he was given credit thereon for all that he had paid to the appellees, and there remained a balance due from him to them of $1,615.38, which statement was reduced to writing, signed by both, and is as follows:

MISCELLANEOUS DEBITS.

Date    Advance charges, freights, taxes, insurance,    Debit.
        Short Interest, etc.
01–6–22    To Frt. on Inv. T. 98 T. H.............. 8 43
    10–25    " Int. on Twine account............... 7 38
                                                   ———
            Forward.........................15 81

An account stated of the 1901 sales of O. P. Kellogg at St. Joseph, Ill., as the agent of the Deering Harvester Company, Chicago, Ill.

| Date   No alterations permitted on this Account Stated. | | Debit. |
|---|---|---|
| To Miscellaneous Brought Forward | | 15 81 |
| Twine. | | |
| " 12950 lbs. Stand. Twine sold at — cents per lb. net. | 1,084 56 | |
| " 250 lbs. Stand. Man. Twine sold at — cents per lb. net. | 23 75 | |
| | | 1,108 31 |
| Extras and Oil. | | |
| " Commissions Extras at list prices— | 107 99 | |
| " Net Cash Extras.................. | 7 03 | 115 02 |
| Rakes. | | |
| " 1 10–2 ft. Steel Wheel Horse D. Hay Rake at $18.50 each net.... | 18 50 | 18 50 |
| Binders and Shredders. | | |
| " 6 6-ft. Ideal Binders sold at $97.50 each, time price.................. | 585 00 | |
| " 8 7-ft. Ideal Binders sold at $100 each, time price.................. | 800 00 | |
| | | 1,385 00 |
| Forward.......... | | 2,642 64 |

| | | | | |
|---|---|---|---|---|
| | Brought forward.......... | | | 2,642 64 |
| To 1 8-ft. Ideal Binder sold at | | | | |
| | $112.50 each, time price.... | 112 50 | | |
| " 1 Corn Harvester sold at | | | | |
| | $105 each, time price...... | 105 00 | | 217 50 |

" 1 Truck free.
" 16 Bundle Carriers free.
    Mowers and Reapers.
" 1 4½-ft. Ideal Mower sold
  at $35 each. time price..   35 00
" 9 5-ft. Ideal Mowers sold at
  $36 each, time price....   324 00    359 00

    Forward      $3,219 14
No Alterations Permitted on this Account Stated.

| Date | | | | Debit | Credit |
|---|---|---|---|---|---|
| 01 | | | Brought forward........ | 3,219 14 | |
| 10 | 25 | By freight Inv. T. 98 T. H. | | | 8 43 |
| " | " | " allowance freight...... | | | 57 35 |
| " | " | " Gratis vouchers Com. | | | |
| | | | Ex.................. | | 5 65 |
| " | " | " Inv. D. 11,078 short on | | | |
| | | | machs. from Chgo... | | 28 00 |
| " | " | " 25 per cent Com. on | | | |
| | | | $74.34 Com. Ex. sold | | 18 58 |
| " | " | " Vouchers for woodwork | | | |
| | | | on machines........ | | 50 |
| " | " | " 38 notes to Peebles... | | 1,455 25 | |
| " | " | " Bal. unaccounted for... | | 1,645 38 | |

Amount yet to account for
in cash................ 1,645 38
of which $506.25 is for
machines charged at time
prices, subject to a dis-
count of $25 provided
entire cash balance is
delivered on or before
Jan. 1st, 1902.
Total proceeds yet to ac-
count for to D. H. Com-
pany.................. 1,645 38   3,219 14   3,219 14

We, the undersigned, agree that the sum of $1,645.38 as
shown on this sheet, represents the unaccounted-for net
proceeds of sales of personal property belonging to the

Deering Harvester Company and I (or we) agree to deliver said sum to said company without discount, offset or counterclaim.

Dated at St. Joseph, Ill., this 25th day of October, 1901.
DEERING HARVESTER COMPANY.
(Signed)   By C. E. PEEBLES, Traveling Adjuster.
(Signed)   O. P. KELLOGG,
Sales Agent for Deering Harvester Company."

In a day or two after the above was signed, Mr. Peebles called upon the appellant and showed him said statement of Mr. Kellogg's account with his signature thereto, and demanded that the appellant pay the balance of $1,615.38 which Mr. Kellogg was in arrears, but appellant failed to do so.

On November 26, 1901, the appellant wrote a letter to the appellees, which is as follows:

"ST. JOSEPH, ILL., Nov. 26, 1901.
DEERING BINDER Co., Springfield, Ill.

SIRS: I signed the Deering Binder contract with O. P. Kellogg of St. Joseph, Ill., and you know he has went into bankruptcy, and your agent, Mr. C. E. Peebles, has talked with me and says Mr. Kellogg is short to your firm about $1,622, and I, after advising, think and request you to appear at court the    and make every effort to get the best settlement you can, as you know all about your deals with him and can do it to a better advantage than I can.   I am ready to answer for his shortage when you get a settlement, and I know the balance.   Please answer.

Yours very truly,
G. M. SWISHER."

The " court" referred to in the letter is the United States District Court for the Southern District of Illinois, in which the bankrupt estate of Mr. Kellogg was then being administered.

The appellant objected to the introduction in evidence of the statement of account between Mr. Kellogg and the appellees for the season of 1901, assigning several reasons, among which were (1) that Kellogg was not the agent of the appellees when it was made and signed; (2) that he was not the agent of appellant when it was made; (3) that the appellant has not had time to investigate the correct-

ness of it; and (4) that Kellogg does not possess the power to bind the appellant as to the amount of recovery in this case.

(The court overruled the objection and the appellant preserved an exception.)

At the instance of the appellees, the court gave the jury, among others, the following instructions:

"2. The court instructs the jury that if you believe from the evidence in this case that the instruments in question were signed by the defendant, Swisher, and turned into the hands of O. P. Kellogg, and by him delivered to the Deering Harvester Co., then it will make no difference in this case what agreements or understandings the said Swisher might have had with the said O. P. Kellogg with reference to the delivery of said instruments, or the procuring of any other person to join with the said Swisher as co-guarantor, unless you believe from the evidence Peebles knew of it when he received the contract, but notwithstanding any agreement between Kellogg and Swisher, if the said contracts of guaranty were delivered to the Deering Harvester Co., the same will be valid, binding and subsisting obligations and the defendant will be bound thereby."

"3. The court instructs the jury that if you believe from the evidence in this case that the instruments in question were turned over to the agency of the Deering Harvester Co., then the law will presume that the same was delivered to the said company, and it devolves upon the defendant, Swisher, to establish by a preponderance of all the evidence in the case that the same was not delivered, before he will be entitled to defeat a recovery thereon on that ground."

"5. The court instructs the jury that if you believe in this case that the instruments in question were turned over to the agent of the Deering Harvester Co., by the defendant, Swisher, and that nothing was said at the time the same was turned over to him with reference to the same, then such action would be a valid and binding delivery of the instruments in question, provided you do not also believe from the evidence that there was an agreement known to Peebles that Yates was to sign as co-guarantor before the contract took effect."

And refused the following instructions requested by the appellant:

" 1.   If you believe from the evidence that the contract of the plaintiff company with Kellogg and the guaranty by the defendant were signed by Kellogg and the defendant, Swisher, on March 26, 1901, then the contract of the plaintiff company with Kellogg was not binding upon the parties to it until it was accepted by the plaintiff company at its office in Chicago; and if you further believe that such contract was not accepted by the plaintiff company until April 4, 1901, then in such case the defendant, 'Swisher, was not bound until such acceptance, and was consequently entitled to notice of the acceptance of his offer of guaranty."

" 2.   The court instructs you that the defendant's offer of guaranty was a continuing guaranty of debts to be created in the future and that the offer of guaranty was unlimited as to amount or time at which it might take effect, and that such guaranty will not be binding upon the defendant, Swisher, unless you believe from the evidence that the defendant, Swisher, received a valuable consideration therefor, or unless the plaintiff gave the defendant notice from time to time of the goods sold and shipped to the agent, Kellogg, and of the defendant's accruing liability therefor."

" 3.   The court instructs the jury that if you believe from the evidence that there was a statement of account between the plaintiff company and its agent, Kellogg, and that the agent, Kellogg, made an admission that a certain balance then determined was due by him to the plaintiff company, such admission by the agent, Kellogg, to the plaintiff company of his indebtedness to the plaintiff company is not binding upon the defendant, Swisher."

" 4.   If you believe from the evidence that there was a statement of account between the plaintiff and its agent, Kellogg, and that Kellogg made an admission that a certain sum then determined was due by him to the plaintiff, and that such statement of account and admission of indebtedness was made by Kellogg after he ceased to be the agent of the plaintiff, then in such case, neither the statement of account nor the admission of the amount due are binding upon the defendant, Swisher."

" 5.   The court instructs the jury that any admission of indebtedness by the agent, Kellogg, to the plaintiff company is not binding upon the defendant, Swisher, unless such admission is proved by a preponderance of the evidence, and unless you further believe from the evidence that such statement of account or admission by Kellogg is a truthful statement of the actual amount due from the agent, Kellogg, to the plaintiff company."

"7. The court instructs you that under the terms of Kellogg's agreement with plaintiff, Kellogg was bound to promptly pay over to plaintiff all cash received, and if he did not do so, but with the knowledge and consent of plaintiff did not promptly pay such money, but was in default by consent of plaintiff, then and in such case the defendant is discharged from his obligation as guarantor, and you will so find."

"9. The court instructs the jury that under the pleadings and issues formed thereby in this case the burden of proof is upon the plaintiff company to establish by a preponderance of the evidence that the guaranty was delivered by the defendant to the plaintiff company or its agent in that behalf without condition or reservation as to the time at which the guaranty should take effect."

It is contended that the verdict is contrary to the evidence for the reason that in the "Machine Contract" it is provided by the third article that Kellogg shall be allowed by the appellees, in full compensation or consideration for all his undertakings, "the excess or difference between the net price specified herein, and the price obtained from the purchaser," and by section 1 of article 1, that Kellogg agrees to sell only upon the terms and at the prices prescribed by the appellees, and as neither selling prices nor net prices are prescribed by the appellees in the contract, therefore there is no basis in that contract to charge either Kellogg, the principal, or the appellant, the surety.

There would be much force in that contention were it not for the provision contained in article 4 of the contract, which is to the effect that all the goods received by Kellogg as agent for the appellees between January 1, 1901, and August 1, 1901, and others subsequently ordered or received * * * "are to be settled for at the prices below named or such other net prices as said Deering Harvester Company subsequently makes in writing to said agent" (Kellogg).

And the uncontradicted testimony of Mr. Peebles is that the appellees sent to Mr. Kellogg, with each shipment of goods during the season of 1901, a written invoice upon which appeared the net price (cost to appellant) of each article sent, and therefore there is provision made by the

fourth article of the "Machine Contract," for charging Mr. Kellogg, the principal, and the appellant, the surety, with those net prices which had been furnished him by the appellees in writing in such invoices.

The further contention of the appellant that he turned the guaranties over to Mr. Kellogg after they were signed by him to be delivered to Mr. Peebles upon conditions which were never fulfilled, is flatly contradicted by both Mr. Kellogg and Mr. Peebles, and it was the province of the jury to believe them rather than him on that question.

The appellant insists that he is not liable under the guaranties for the reason that he was not notified by the appellees that they had accepted his offer to guarantee the performance of the terms of the contracts by Mr. Kellogg, nor was he notified by them that Mr. Kellogg was not complying with the terms of his contracts at the times such failures occurred.

But we are of opinion that notice thereof is waived by the appellant in each of the written warranties where it is said, "we (appellant) hereby waive notice of acceptance of the above contract, and notice of default of the above named agent," the "above contract" referring to both the contract of Mr. Kellogg with the appellees and the contract of the appellant with them as expressed in each of the warranties, for all are written upon the same piece of paper, and are above the respective signatures of the appellant.

Besides, in his letter to the appellees of November 26, 1901, the appellant, with full knowledge of everything now claimed by them from him in this law suit, expressly promised to pay the appellees the shortage of Mr. Kellogg under the contracts in question, for the express reason therein stated by himself, that he knew he had guaranteed it as claimed by their Mr. Peebles, which is also a complete waiver of any notice of the acceptance of his warranties by the appellees, as well as notice of Kellogg's default. And the fact that the appellant lived near to where Mr. Kellogg received the goods and sold them as the agent of the appellees, and that the appellant had been requested to guarantee that Mr. Kellogg would account and pay over to the appel-

lees before they would appoint him their agent for the season of 1901, are all strong circumstances from which the court and jury might infer that the appellees had notice that his offer to so guarantee had been accepted and was being acted upon.

The claim is made that the court should not have admitted the written statement and acknowledgment of Mr. Kellogg, that he had not accounted and paid over to the appellees the balance of $1,617.38 which he owed them at the net prices (cost to Kellogg) for their goods sold by him during the season of 1901.

But it is a complete answer to such claim that each of the written warranties signed by the appellant provide " that the written acknowledgment of said agent (Kellogg) shall in every respect bind and be conclusive against the undersigned," and we know of no reason in law or justice, nor has any been stated by counsel for the appellant, why that provision is not binding upon the appellant in this case; and being so, it would have been prejudicial error against the appellees for the court not to have admitted it in evidence.

All the instructions given to the jury by the court at the instance of the appellees, we find were in accordance with the law applicable to their contention and the facts proven on the trial, and all of those that were offered by the appellant and refused by the court, were properly refused, for the reasons given in this opinion when passing upon the questions of waivers made by the appellant in the written guaranties which he had signed, and in his letter to them; and for the further reason that they were not applicable to the facts shown on the trial.

Finding that the verdict and judgment are in accordance with the facts proven, as well as the law applicable thereto, and that the court properly ruled on the instructions, we will affirm the judgment.

Mr. Justice WRIGHT, having heard the case in the Circuit Court, took no part in its consideration and determination in this court.